IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JANE DOE AND JOHN DOE, | § | |
| INDIVIDUALLY, AND AS NEXT | § | |
| FRIENDS OF JANE DOE 1, A MINOR | § | |
| | § | |
| | § | |
| v. | § | C. A. NO. 1:21-cv-00190-MJT |
| | § | Jury Trial |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT; AND BRANDON LOUIS | § | |
| CHILLOW, INDIVIDUALLY AND | § | |
| AS AN EMPLOYEE OF BEAUMONT | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |

## PLAINTIFFS' SIXTH AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JANE DOE and JOHN DOE, Individually, and as Next Friends of JANE DOE 1, A Minor, and file this their Sixth Amended Complaint against BEAUMONT INDEPENDENT SCHOOL DISTRICT and BRANDON LOUIS CHILLOW, Individually and as an Employee (now former employee) of BEAUMONT INDEPENDENT SCHOOL DISTRICT, and shows the Court as follows:

### I.
### INTRODUCTION & REQUEST FOR USE OF PSEUDONYMS

1.0    This is an action arising from the policies, customs, practices and indifference of Defendant BEAUMONT INDEPENDENT SCHOOL DISTRICT (also referred to as "BISD" or "BEAUMONT ISD") concerning the risks of sexually inappropriate conduct by educators and employees toward students which lead to the sexual harassment and abuse suffered on the Minor Plaintiff (JANE DOE 1) in violation of

the Minor Plaintiff's (i) Constitutional substantive due process and equal protection rights, (ii) statutory rights provided by 20 U.S.C. §1681(a) ("Title IX"), and (iii) rights protected by the common law of the State of Texas.   Plaintiffs bring this lawsuit against those responsible for the sexual harassment and abuse.   Plaintiffs bring substantive due process and equal protection claims against Defendants BISD and former teacher, BRANDON LOUIS CHILLOW, individually and as an employee (now former employee) of BISD.   Defendant CHILLOW is sued for these claims in his individual and official capacities.   Plaintiffs assert claims pursuant to Title IX against Defendant BISD only.   Plaintiffs also assert pendent state common law claims.   Plaintiffs seek to recover a money judgment against Defendants for damages Defendants inflicted on the Minor Plaintiff in violation of the Minor Plaintiff's federal civil rights.

1.1     Without limitation, the facts and claims in this case concern harm and injuries caused by the wrongful practice known as ""Pass the Trash," whereby a teacher known or suspected to be engaging in sexually harassing/abusive conduct toward students at one campus is simply removed off the campus and allowed to continue working at other campuses, here, within the same school district.   Here, by the time Defendant Chillow harassed/abused Jane Doe 1, he had been removed by BISD school officials at one campus within BISD -- Paul Brown Learning Center ("Paul Brown") -- for reports and information that he was engaging in sexually based harassment and abuse of female students.   However, rather than report Chillow's harassing/abusive conduct to the authorities and permanently stop Chillow from ever working at

another campus, BISD employees -- with authority to take corrective measures to stop the harassment/abuse and insure Chillow never worked at another school -- did not report Chillow and instead allowed him to be moved and transferred off the Paul Brown campus without taking remedial steps to permanently remove Chillow from the district, thereby increasing the risk and vulnerability of sexual harassment/abuse of female students posed by Defendant Chillow, including female students at Vincent Middle School, and particularly including Jane Doe 1.

### A.    Request for Use of Pseudonyms/Anonymity

1.2    Because this lawsuit involves sexual abuse toward the Minor Plaintiff and evidence of sexual abuse of other Minors, Plaintiffs request the Court permit Plaintiffs to proceed anonymously to help protect the privacy, dignity and well-being of the Minor Plaintiff and witnesses.   *See,* FED.R.CIV.P. 5 (a)(3); *Doe v. El Paso County Hosp. Dist.,* No. EP-13-CV-00406, 2015 LEXIS 46081 (W.D. Tex. April 1, 2015) (Examples of situations warranting anonymous actions, include (i) challenging governmental activity, (ii) disclosure of intimate, personal information, (iii) lawsuits involving particularly vulnerable parties or witnesses – including but not limited victims of assault, and (iv) protecting against risk of mental harm) *Id.,* at *5–10.

## II.
## PARTIES

2.0    JANE DOE and JOHN DOE, Individually, and as Next Friends of Minor, JANE DOE 1, are individuals residing in Natchitoches Parish, Louisiana.

2.1    Defendant BRANDON LOUIS CHILLOW (hereinafter referred to as "Defendant CHILLOW"), is sued in his individual capacity and official capacity, and

was previously served with process but has not answered or otherwise made an appearance in this matter.    At all times material to this suit, Defendant CHILLOW was employed as an educator by Defendant BEAUMONT INDEPENDENT SCHOOL DISTRICT.   The acts complained of arise from the conduct of Defendant CHILLOW, while acting under the color of state law, and were committed within the scope of his employment with Defendant BEAUMONT INDEPENDENT SCHOOL DISTRICT, some of which occurred at school.

2.2    Defendant BEAUMONT INDEPENDENT SCHOOL DISTRICT, is a political subdivision and/or municipality of Jefferson County, Texas.   Defendant BISD is responsible for the policies, practices, and customs of its school district, as well as the hiring, training, supervision, control and discipline of its teachers, principals, assistant principals and staff, among which include substitute teachers.   Defendant BISD, is and was the employer of the school personnel named herein as individual defendant(s), including Defendant CHILLOW.   BEAUMONT ISD was served and previously filed its Answer.

### III.
### JURISDICTION AND VENUE

3.0    Pursuant to 28 U.S.C. §§1331, 1343(3) the court has original, federal question jurisdiction over constitutionally based claims for which redress is provided by 42 U.S.C. §1983, and Plaintiffs' Title IX claims    The Court has supplemental jurisdiction over the state law claims in this suit pursuant to 28 U.S.C. §1367(a) because such claims are so related to the federal claims in that all of such federal and state claims form part of the same case or controversy under article III of the United

States Constitution.

3.1    The acts giving rise to this lawsuit occurred in Jefferson County, Texas.

3.2    Included below is a Request for Jury Trial under FED.R.CIV.P. 38.

## IV.
## BACKGROUND CONCERNING TITLE IX, TEXAS LAW AND SOME OF RELEVANT BISD'S POLICIES & PROCEDURES

4.0    When it is alleged in this complaint that Defendant BEAUMONT ISD committed any act and/or omission, it is meant that Defendant BEAUMONT ISD and/or its board, trustees, and/or its officers, and/or its superintendent(s), and/or its administrators, and/or principals, and/or agents, and/or teachers, and/or employees or representatives with authority and responsibility to stop and report sexual abuse and harassment to students, committed such act and/or omission under color of state law, and that at the time, it was done with full authorization and/or ratification of Defendant BEAUMONT ISD or done in the normal, customary practice and routine course and scope of employment of Defendant BEAUMONT ISD.

### A.    LEGAL AUTHORITIES & RESOURCES PUTTING SCHOOL DISTRICTS ON NOTICE OF THE NEED TO IDENTIFY, REPORT, AND INVESTIGATE REPORTS OF SEXUAL HARASSMENT/ABUSE OF STUDENTS

4.1    The Educational Acts of 1972 passed through Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. sections 1681 through 1688. It is commonly known as "Title IX" and states (in part) that:

> No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

It is intended to remedy the effects of discrimination based upon sex, gender or gender stereotypes. Moreover it is to assure that a student is not a victim of bullying, harassment, sexual harassment, assault or sexual assault because of their membership in this protected class.

4.2    The U.S. Department of Education promulgated rules to help implement Congress' intent at 34 C.F.R. §106.1, which became effective in 1975. From the inception of Title IX the United States Department of Education ("DOE") in their *Office for Civil Rights* (OCR) issued policy guidance on discriminatory harassment. They did so regarding harassment based upon sex ["Title IX"] (*see* 62 Fed. Reg. 12034 [Mar. 13, 1997]). These rules made clear that school personnel must understand their legal obligations to address harassment based upon sex, gender and gender stereotypes and further, that they were in the best position to recognize and prevent the harassment, to lessen the harm to students if, despite their best efforts, harassment continued to occur and importantly, remedy the effects of the harassment:

> The elimination of sexual harassment of students in federally assisted educational programs is a high priority for OCR. Through its enforcement of Title IX, OCR has learned that a significant number of students, both male and female, have experienced sexual harassment, that sexual harassment can interfere with a student's academic performance and emotional and physical well-being, and that preventing and remedying sexual harassment in schools is essential to ensure nondiscriminatory, safe environments in which students can learn.  ……

> …..The critical issue under Title IX is whether responsive action that a school could reasonably be expected to take is effective in ending the sexual harassment and in preventing its recurrence.

62 Fed. Reg. 12034.

4.3    In June 1998, the Supreme Court issued its opinion in *Gebser v. Lago Vista Indep. Sch. Dist.* 524 U.S. 274 (1998) recognizing that school districts may be held liable for sexual harassment under Title IX when employees having authority to rectify the harassment have knowledge of harassing behavior but are deliberately indifferent to the teacher's conduct.    In May 1999, the Supreme Court issued its opinion in *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999) (a student on student harassment case) explaining that school districts can be liable for deliberate indifference in Title IX harassment cases for either (1) causing students to undergo harassment, or (2) making them vulnerable to harassment.    *Id.,* at 644-45.    In *Davis,* the Court also noted that School Boards were on notice that they could be held liable for their own failure to address harassment and follow the guidelines developed by the Department of Education's Office of Civil Rights.    *Davis,* 526 S.Ct. at 647 *referencing* National School Boards Association Council of School Attorneys, Sexual Harassment in the Schools: Preventing and Defending Against Claims v, 45 (rev. ed.) The *Davis* Court also recognized that notice of proscribed misconduct was included in the OCR's recently issued policy guidelines:    "Department of Education, Office of Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034, 12039-12040 (1997) (OCR Title IX Guidelines)."    *Id.,* at 647-48.

4.4    In addition to the above referenced federal authorities, at all relevant times to this case, Texas law has put school districts on notice of the need to protect students

from sexually harassing abusive conduct and report said conduct. *See Tx. Fam. Code Sec.* 261.001; 261.101 (reporting requirements)   The Texas Education Code has likewise included a reporting requirement mandating that a superintendent notify the State Board if they have reasonable cause to believe that an educator has a criminal record, or was terminated based on a determination abused or committed an unlawful act with a student or minor. *Tx. Educ. Code Sec.* 21.006.   The Texas Education Code provides that school districts may develop and implement a sexual harassment policy to be included in the district improvement plan. *Tx. Educ. Code Sec.* 37.083.   Likewise, the Texas Administrative Code includes a requirement that the Board of Trustees establish and annually review policies for reporting child abuse and neglect, and that the policies be distributed to all school personnel each year and be addressed in staff development programs at regular intervals. *See Tx. Admin. Code Sec.* 61.1051.

## A.    BISD's POLICIES & PROCEDURES

4.5    On February 18, 1993, BISD adopted Policy No. 4040, "RE: PROHIBITION AGAINST SEXUAL HARASSMENT" ("Policy 4040") through which BISD, recognized the special relationship between teachers and students as follows:

> Because teachers and other employees stand in a loco parentis relationship with students, a relationship grounded upon security and trust, any inappropriate and unwelcome sexual references, attention or pressure of any kind will have the effect of violating that relationship.

BISD's Policy 4040 provided a non-exhaustive list of examples of sexual harassment, which included:

Repeated unwelcome flirtation, advances, propositions;

Offensive or inappropriate touching;

Persistent pressure to date;

Obscene or lewd sexual jokes, or suggestions about other employee's (or a student's body); ….

Obscene or suggestive letters, telephone calls … and other types of communication;

Displaying sexually explicit or suggestive materials;

Ignoring or not taking seriously an employee or student who complaints about sexual harassment;

With regard to reporting sexual harassment, BISD's Policy 4040 "encouraged" employees to report sexual harassment to the Executive Director of Personnel. Likewise, Policy 4040 "encouraged" students to immediately report the problem to the principal, assistant principal or counselor.

4.6    On October 5, 2007, BISD issued its Policy titled "Student Welfare Freedom of Harassment." ("2007 Policy")    Without limitation, among the provisions of the 2007 Policy, were that "permissible physical contact such as … comforting a child with a hug, or other physical contact not reasonably construed as sexual in nature is not sexual harassment."   The policy defined sexual harassment as including welcome or unwelcome sexual advances, sexually motivate verbal or nonverbal conduct when:

1.    A District employee causes the student to believe the student must submit to the conduct in order to participate in a school program or activity, or that an employee will make an educational decision based on whether or not the student submits to the conduct;   or

2.    The conduct is so severe, persistent or pervasive that it:

      a.    Affects the student's ability participate in or benefit from an educational program or activity, or otherwise adversely affects the student's educational opportunities, or

      b.    Creates an intimidating, threatening, hostile or abusive educational environment.

The Policy advised students "should" immediately report harassment to a teacher, counselor, principal or other District employee. The Policy "required" District employees who receive notice that a student has or may have experienced prohibited harassment to immediately report it.   The Policy required that reports of suspected child abuse or neglect be made as required by law.   The Policy also required notification to the parents of any student who allegedly experienced prohibited harassment by a district employee. The Policy required an investigation by the District and that it "should be" completed within 10 business days from the date of the report.

V.
__FACTUAL ALLEGATIONS__

**A.    BISD WAS ON NOTICE OF DEFNDANT CHILLOW'S PROPENSITY TO ENGAGE IN SEXUALLY HARASSING/ABUSIVE CONDUCT TOWARD STUDENTS**

5.0    Upon information and belief, BISD hired Defendant CHILLOW in or around 2012 to work as a substitute teacher in the District.   Defendant CHILLOW was not a certified educator/teacher.   Defendant CHILLOW was hired despite a prior arrest in Jefferson County, Texas for furnishing alcohol to minors.

5.1    Upon information and belief, following his hiring by BISD in 2012, CHILLOW began working as a substitute teacher and/or teacher's aide/tutor at the Paul Brown Learning Center campus in 2012. Upon information and belief, during his time at Paul Brown, Defendant CHILLOW engaged in inappropriate sexually harassing, abusive conduct toward female students, similar to the sexually abusive, harassing and inappropriate conduct he would later engage in with JANE DOE 1 and at least one other student at Vincent.

5.2    Upon information and belief, including accounts from former students who attended Paul Brown when CHILLOW was working there, Defendant CHILLOW engaged in sexually harassing/abusive inappropriate conduct toward female students at Paul Brown, which included but was not limited to grooming and solicitous conduct toward female students, and sexually inappropriate conduct toward students. Based on information from former students of Paul Brown, including and without limitation, H.T., N.V., A.B., and V.M., while Defendant Chillow was at Paul Brown:

1.    Defendant Chillow openly flirted with female students on campus, groomed students, and acted like a sexual predator.

2.    Chillow groomed and manipulated N.V. into having an inappropriate sexual relationship with Chillow.  Chillow texted female students, including N.V., nude photos, which were shown to other students on campus. Chillow openly flirted with N.V. at school, and even drove N.V. from school on a couple of occasions. As part of his manipulation and coercion of students, Chillow used alcohol as part of his abuse.   In addition to N.V. there was open talk around campus that Chillow was involved in sexually inappropriate relationships with one or more other female students.

3.    Talk of Chillow's sexually inappropriate conduct toward female students occurred openly on campus such that it was not possible

that BISD's principal staff and teachers were unaware of the conduct.

4.       Eventually, N.V. was asked to attend a meeting with BISD officials at Paul Brown concerning her relationship with Defendant Chillow. Defendant Chillow was also interviewed. After Defendant Chillow was interviewed, but before N.V. was interviewed, Defendant Chillow found N.V. on campus and had her delete messages and photos he had sent N.V., and told N.V. to deny any relationship with Chillow.   Under Chillow's manipulation and control, N.V. complied, attended the meeting and denied having any inappropriate relationship with Defendant Chillow.   During the meeting, BISD counselor, Ms. Hood, acknowledged hearing rumors about Defendant Chillow's sexual harassment/abuse of N.V.   However, under Defendant Chillow's manipulation and control, N.V. denied being in any relationship with Defendant Chillow.   BISD did not counsel or provide training to N.V. on grooming, psychological manipulation or predatory behavior from teachers. N.V.'s parents were not present at the meeting.   After the meetings, Chillow continued to work at Paul Brown for some period of time.

5.       In addition to N.V. another former student of Paul Brown, V.M., met with the counselor, Ms. Hood, and told Ms. Hood that Mr. Chillow was hitting on her, making inappropriate comments about her body on campus, including that he wanted to see her breasts.   Ms. Hood acknowledged hearing that Mr. Chillow was involved in a sexual relationship with a female student, separate from N.V., and that she (Ms. Hood) was going to do something about it.

6.       Former students, JJ and VM informed BISD's attendance clerk, Ms. Brown, about Defendant Chillow's sexually inappropriate/harassing behavior.

5.3    Upon information and belief Defendant Chillow was eventually removed from Paul Brown for information indicating that he was engaging in sexually harassing/inappropriate conduct with female students.    Thus, upon information and belief, factual information (including talk on campus) concerning Defendant

CHILLOW's sexually inappropriate harassment and abusive conduct toward one or more female students of Paul Brown came to the attention and awareness of the Assistant Principal and/or counselors and/or administrators, employees with authority to correct the harassment and take steps necessary to prevent CHILLOW from working at other campuses within BISD.  However, rather than take those steps to report CHILLOW's conduct to prevent him from working at other campuses, CHILLOW was only removed from the Paul Brown campus, and BISD continued to employ CHILLOW as a substitute teacher at other campuses, including but not limited to Vincent Middle School, where he continued the inappropriate acts of sexual harassment and abuse, including toward JANE DOE 1, before BISD finally terminated his employment and notified the authorities.

5.4    Around the time CHILLOW was removed from the Paul Brown campus, word of Defendant Chillow's removal from Paul Brown for inappropriate conduct had spread beyond the Paul Brown campus. (*e.g.*, Odom School, per witness testimony in this case)  That said, BISD continued to employ CHILLOW allowing him to work at multiple campuses, up until after he sexually groomed, harassed and abused students at Vincent Middle School, including JANE DOE 1, and at least one other female student.

5.5    BISD's notice of reports of CHILLOW's misconduct at Paul Brown and continued employment of CHILLOW following said misconduct at Paul Brown occurred around the final part of Superintendent Carroll Thomas's tenure with BISD, and was consistent with BISD's custom and practice of disregarding written policies

prohibiting sexual harassment, and discounting reports of inappropriate sexually based harassment of students and the ongoing risk of abuse and harassment to students from educators/employees who engaged in said conduct, including CHILLOW.

5.6    BISD's allowing CHILLOW's continued employment after his removal from Paul Brown was consistent with, (1) the district's prior and continued indifference to the ongoing risk of sexually based harassment toward students by CHILLOW, (2) failure to adhere to BISD's policies prohibiting sexual harassment, (3) failure to implement training and policies aimed at detecting, identifying and stopping sexually harassing and abusive behavior from educators/employees, (4) policies, practices and customs of disregarding and/or discounting known and/or suspected risks of sexual abuse and harassment of students, and (5) failing to implement training for,  (i) employees,     (ii)  students  and  (iii)  parents,  concerning  inappropriate romantic/sexually based conduct by educators toward students.

5.7    Upon information and belief, as of April 2019, the only campus CHILLOW had worked as a substitute teacher over the prior year was Vincent Middle.   Upon information and belief, while working as a substitute teacher at Vincent, Defendant CHILLOW was continuing to openly engage in grooming and harassing, solicitous acts toward the Minor Plaintiff, JANE DOE 1, and at least one other female student Vincent.    Defendant  CHILLOW's  inappropriate  grooming,  solicitous,  and harassment conduct of female students occurred on campus during school hours and included but was not limited to flirtatious behavior and communications toward

JANE DOE 1, including providing a vape to JANE DOE 1 and allowing JANE DOE 1 and other female students to skip their assigned class, and be in his classroom smoking a vape. Upon information and belief, the Principal, and/or Assistant Principal (Ms. Whitfield) and/or administrators and employees at Vincent Middle School with authority to investigate and terminate CHILLOW were aware of Defendant CHILLOW's referenced inappropriate grooming and harassment, specifically his allowing JANE DOE 1 and at least one other female student to skip class and providing JANE DOE 1 with a   vape, and allowing JANE DOE 1 to use the vape in his class, and with CHILLOW also vaping in the class.   With this knowledge, said employees failed to recognize Defendant CHILLOW's grooming and inappropriate conduct, investigate CHILLOW's conduct, or stop CHILLOW from continuing to harass/groom and abuse JANE DOE 1 and the other female student. Thereafter, and without limitation, CHILLOW sexually assaulted JANE DOE 1, two of which assaults occurred on or about April 26, 2019 and May 3, 2019 per the criminal indictment.   One more assault(s) occurred at Vincent.   Defendant CHILLOW threatened to harm JANE DOE 1's parents if she reported him.   During this time period, the Minor Plaintiff JANE DOE 1 was age 15.

5.8    Eventually, the parent of another female student being sexually harassed/abused by CHILLOW presented the Principal Staff at Vincent with evidence of his abuse of their child, who was 13years old.   In connection with CHILLOW's harassment and abuse of JANE DOE 1, Defendant CHILLOW was indicted on criminal charges for sexual assault (child) and improper relationship

between educator and student.   CHILLOW plead guilty to Improper Relationship between educator and student and was sentenced to 6½ years in prison.   *See,* "Exhibit A."

5.9    Defendant CHILLOW's sexual abuse and harassment of JANE DOE 1 and at least one other students at Vincent and multiple students at Paul Brown was done while he was acting under color of state law as a teacher/educator for Defendant BISD, and included improper conduct occurring on campus.

5.10    As referenced above, while acting under color of state law, Defendant CHILLOW engaged in other acts of sexually harassing and inappropriate conduct toward at least one other Minor student at Vincent Middle School, which abusive conduct is made the subject of a separately filed lawsuit, C.A. No. 1:21-cv-00132, *Jane Doe, Individually, and as Next Friend of Minor Jane Doe 1 v. Beaumont Independent School District and Brandon Louis CHILLOW*, U.S. District Court, Eastern District of Texas and some of which abuse lead to criminal charges for online solicitation of a minor with intent to sexually assault, for which Defendant CHILLOW was criminally charged, plead guilty and was sentenced to prison.

5.11    Upon information and belief, at the time Defendant CHILLOW was indicted for his abuse of JANE DOE 1 and one other student at Vincent, CHILLOW had been consistently working as a substitute teacher at Vincent Middle School at different intervals, for over one year, and no other campus.   Following his indictment, the parent of a child posted the following comment, indicating that a student knew Defendant CHILLOW was the offender before the news ever released the name:



To emphasize, a middle-school "child" had recognized behavior from Defendant CHILLOW, such that the child knew exactly which educator/teacher was the offender. Similarly, following CHILLOW's arrest, a student provided a witness statement describing CHILLOW's inappropriate conduct on the Vincent campus as follows:

"He would openly flirt with other girls which include ………………………"

"I heard he and ….. went to a hotel together."

"….. would skip class to go into the class he was subbing in."

---

[1] The unredacted comment has been produced in discovery.

In a separate account from a former student -- Chillow's conduct at Vincent toward female students was easily noticeable as flirtatious and inappropriate, and there was open talk among students concerning Chillow's conduct. Even to this student, Chillow seemed infatuated with JANE DOE 1.

5.12    Around the time Defendant CHILLOW was criminally charged for his conduct with JANE DOE 1, current and former employees of BISD and former students posted written statements/comments that Defendant CHILLOW – while employed as an educator with BISD – had previously engaged in similar sexually inappropriate relationships and conduct with one or more other female students while he was working as an educator for BISD at Paul Brown Learning Center, prior to being assigned to Vincent Middle School and prior to the sexual abuse suffered upon JANE DOE 1.   The statements included the following:



<sup>2</sup>



5.13    Upon information and belief, reports and information of CHILLOW's engaging in inappropriate conduct of a romantic, flirtatious, sexual nature, were made to those employees at Paul Brown with authority to either terminate and/or begin the process of terminating CHILLOW.    However, rather than take those steps, CHILLOW was only removed from Paul Brown and allowed to continue working at other campuses within the district.    At least one of the employees who worked at Paul Brown with CHILLOW when he was removed from the campus, and who made the referenced comment that he was removed from campus, assumed Defendant CHILLOW would not be placed at any other campus.    Another teacher from Paul Brown who has testified in this case confirmed that Defendant CHILLOW sent her a picture of his genital, although she recalled hit was during the summer.    One or more former

---

[3] The unredacted statements were previously produced to Defendants' counsel in disclosure.

students of Paul Brown verified CHILLOW's sending female students similar nude pictures, and that students openly talked about CHILLOW's sexually inappropriate behavior on campus.

5.14   BISD continued to employ Defendant CHILLOW as an educator allowing him to work at other campuses, including Vincent Middle School where he continued to engage in the same or similar inappropriate sexually harassing and abusive conduct toward JANE DOE 1 and at least one other Minor student.

### A.    BISD's Policies, Practice and Customs of Disregarding Risks of Sexually Inappropriate Conduct Toward Students

5.15   The moving force behind the sexually harassing and abusive acts toward the Minor Plaintiff – which were violative of the Minor's constitutional rights to personal security, safety, bodily integrity and equal protection under the law, causing the injuries and damages referenced below – were the policies, customs, and/or widespread practices of BISD set forth below, *and* BISD's deliberate indifference to prior and ongoing risks of sexually inappropriate conduct by educators and employees of BISD, including Defendant CHILLOW.   That is, BISD policymakers and/or those delegated with policymaking authority, administrators, decision makers, principal staff, and other staff, adhered to a set of customs and/or practices that included: **(i)** failing to properly screen employees (and particularly uncertified substitute teachers) for criminal histories involving Minors, **(ii)** overlooking, discounting and/or not properly addressing complaints and information indicating inappropriate sexual behavior by educators/employees toward students, **(iii)** failing to record and/or misclassifying/mischaracterizing complaints of sexually inappropriate conduct by

educators/employees, **(iv)** hiring, maintaining and/or assigning educators/employees in disregard for information indicating prior or ongoing sexually inappropriate behavior toward students and minors, and/or prior crimes against Minors, *See*, "Exhibit B" – Amended Complaint from Whitney Guillory for other examples, **(v)** maintaining a tolerance for sexually inappropriate behavior and the associated risks of harm to students, *See,* "Exhibit B" – Amended Complaint from Whitney Guillory for other examples, **(vi)** failing to discipline and remove employees and educators, like Defendant CHILLOW, who engage in inappropriate relationships with students and sexually inappropriate conduct toward students, *See,* "Exhibit B" – Amended Complaint from Whitney Guillory for other examples, **(vii)** failing to adequately train employees on the recognition, identification, proper investigation, and prevention of sexually inappropriate conduct by staff and inappropriate relationships between educators/employees and students, <u>and</u> including sexual, romantic grooming by educators/employees on students, **(viii)**  failing to adequately train students and parents on the recognition, identification and prevention of sexually inappropriate conduct by staff and relationships between educators/employees and students, <u>and</u> sexual, romantic grooming by educators/employees on students, **(ix)** failing to make reporting of suspected sexually inappropriate conduct by students mandatory and properly training students and assuring student that they will not be prejudiced in any way in making reports, **(x)** allowing substitute teachers and other uncertified positions, and/or other positions, to be removed from one campus for sexually inappropriate conduct toward students but continue working at other campuses, and

without notice to the transferee campus of the risk posed by the individual – eg. Defendant Chillow, **(xi)** disregarding the written policies BISD previously put in place addressing reports of inappropriate sexually harassing conduct by employees, **(xii)** failing to properly supervise educators/employees, including Defendant CHILLOW. At least one or more of these policies, customs and practices were adopted, followed and/or ratified by BISD's policymakers and/or those delegated with policymaking authority and was/were the moving force causing Plaintiffs' damages.   Upon information and belief, said policies, customs and practices led to the disregard of Defendant CHILLOW's prior history of inappropriate conduct and relationships with students at Paul Brown and Vincent Middle School, preceding and including his abuse of JANE DOE 1.   That is, by the time BISD finally acted to stop Defendant CHILLOW and reported him to the authorities, he had already engaged in multiple acts of sexually based harassment and abuse of JANE DOE 1, and other and at least one other student.

5.16    Examples of BISD's adherence to one or more of the above policies, customs and/or practices are found in the lawsuit filed by former BISD student Whitney Guillory, which is attached as "Exhibit B."   Whitney Guillory filed a similar lawsuit, styled C.A. No. 2:07-cv-027, *Whitney Guillory v. Beaumont Independent School District, Carroll Thomas, and Ferguson Parker, Jr.*; In the United States District Court for the Eastern District of Texas – Beaumont Division.   The *Guillory* lawsuit alleged that Ferguson Parker (the Band Director of Ozen High School) engaged in alleged sexual abuse of Ms. Guillory while she attended Ozen.   According to the

lawsuit, Parker's alleged abuse of Whitney Guillory occurred after BISD had been made aware of three (3) prior complaints against Parker for sexual abuse of three (3) other students at King Middle School and Ozen High School.  The complaints and proof against Ferguson Parker were sufficient for a criminal indictment of Parker in early 2002.  Rather than permanently terminate Parker, BISD suspended his employment.  At a bench trial, the criminal district judge found the evidence was insufficient to convict Parker of the charges.  Adhering to the above policies, customs and practices, in February 2003 the BISD Board of Trustees and Superintendent disregarded the criminal indictments and nature of the allegations against Parker, and reinstated him to employment as a permanent substitute at Ozen High School. On or about December 16, 2004, Parker was again reported for sexual abuse of a student, who was Plaintiff Whitney Guillory. Parker was again indicted, and eventually pled guilty to crimes against Plaintiff Guillory.

5.17   During the *Guillory* civil case, Superintendent Carroll Thomas provided testimony confirming BISD's policies and practices tolerating inappropriate sexual harassment/abuse by educators/employees on students, and the associated risks of harm to students of continued employment of educators/employees who reportedly engaged in said wrongful conduct.  Specifically, in 2008, Thomas gave deposition testimony addressing BISD's policies and practices with regard to handling allegations of sexual abuse by educators/employees against students which generally indicated the following relevant matters concerning BISD's policies, practices and/or procedures:

1.   If an educator/employee is accused of sexual abuse, the matter is referred to CPS and law enforcement, and the educator/employee is suspended.   If there is no indictment the educator/employee is returned to their position with BISD.

2.   If the educator/employee is indicted they are suspended and/or terminated, but if they are not convicted, they are reinstated.

3.   Even if the evidence in a criminal proceeding showed, more likely than not, that the educator/employee presented a threat to students, BISD's policy and practice was to reinstate the educator/employee.

Echoing Thomas' testimony, minutes from the meeting of the BISD Board of Trustees from February 2003 concerning BISD's continued employment of Ferguson Parker stated that the Policy dictated back pay and reassignment of duties after an employee is acquitted of all charges.

5.18    Thus, in disregard for any written policy prohibiting sexual harassment, the above policy and practice, followed/ratified by the Board of Trustees, required continued employment of individuals who were indicted for sexually inappropriate conduct, so long as they were acquitted of the criminal indictment.   On May 12, 2011, just over one year before Defendant CHILLOW started working for BISD at Paul Brown, the trial court in *Guillory* issued an order which included observations concerning BISD's practices being the cause of the student's injuries:

This never would have happened had the school district and the superintendent made wiser decisions, choices guided by the best interests of the students. At the very least, we expect the school district and superintendent to make decisions that do no harm to the children entrusted to them. That was not the case here. Decisions made at the highest level of the BISD administration did an extraordinarily great deal of harm to Whitney Guillory, and in all likelihood, other young women who were victimized by Ferguson Parker, Jr. while he was on the public payroll. No student should ever suffer at the hands of an

educator, but that the school administration would knowingly reinstate a sexual perpetrator whose dangerous proclivities were known is beyond all comprehension.

*See, Guillory v. Beaumont Indep. Sch. Dist.,* C.A. No. 9:07-CV163, 2011 LEXIS 52150 (E.D. Tex. May 12, 2011).   BISD's continued employment of Ferguson Parker was in compliance with the above-referenced policies, customs and practices described by Superintendent Thomas, and is consistent with the deliberate indifference to the risks associated with employing educators (permanent, substitute, certified, uncertified, etc.) who are known or suspected to have engaged in inappropriate sexual abuse of students by educators/employees.   It was BISD's adherence to these same policies, customs and practices, and indifference to the known or suspected risk of sexually abusive conduct on students and failure to train employees on the detection and prevention of sexually abusive conduct which led to BISD's disregard and/or discounting of complaints and information of sexually inappropriate conduct on the part of Defendant CHILLOW at Paul Brown Learning Center that lead to his and continued employment in the district through his time Vincent, where CHILLOW's acts of grooming, harassment and abuse continued – including toward Jane Doe 1.

5.19   Other instances of BISD's adherence to the above policies, customs and practices and deliberate indifference to complaints and information of sexually inappropriate conduct toward students – particularly against female students – was alleged in the First Amended Complaint filed in the *Guillory* case.   *See,* "Exhibit B" – First Amended Complaint.   Upon information and belief, the BISD Board approved a settlement of the *Guillory* case.

5.20    In addition to the *Guillory* case, on November 14, 2006 a civil rights sexual abuse lawsuit was filed in the Eastern District against BISD, Superintendent Thomas and staff at Ozen High School (Tommy Granger and Roland Antoine) alleging that one or more employees at Ozen organized and maintained a sex club involving students, and that the Minor Plaintiff was a victim of the sexually abusive environment and particularly of sexual abuse from staff, at the age of 14.    *See,* "Exhibit C" – C.A. No. 1:06-CV-00722; *Libby Rose v. Beaumont Independent School District, et al.*  The *Rose* lawsuit involved the same alleged indifference, policies, customs and practices of disregard for known or suspected sexually inappropriate conduct by staff against students – and particularly female students – which policies, customs and practices of tolerance and indifference underlie the claims in this action. *See,* "Exhibit C."    In December 2006, the Houston Press published an article covering the facts alleged in the *Rose* lawsuit and also referenced facts consistent with BISD placing students at risks for sexually inappropriate conduct from employees, as follows:

> Last month several coaches were accused of watching a porno on the Ozen campus; their little viewing party was exposed after the DVD got stuck in the player and they asked a janitor for help.
>
> This past August it was discovered that a convicted sex offender, Leonard Ward, had been helping out at football practices. According to the Texas Department of Public Safety's sex offender database, Ward received six years of probation in the '90s for aggravated sexual assault of a 15-year-old girl. BISD Superintendent Carroll Thomas told the board of trustees that someone would be held accountable for allowing Ward access to students; nothing has happened so far, unless you count the recent demotion of head coach John Clayton.

Clayton confirmed to Beaumont media that Ward was a volunteer for the football team from 2001 to 2005. What didn't get reported was Clayton's own arrest in 1979, when a 13-year-old girl accused him of raping her at Odom Junior High. That complaint was eventually dismissed at the girl's request, according to county records obtained by the *Houston Press*.

This month Clayton was reassigned to a teaching position at Smith Middle School.

Last year, *The Beaumont Examiner*, a weekly paper, took the district's list of approved substitute teachers and cross-referenced it with public criminal records.

"The results included..., one assault and one sexual assault," according to an article written by reporter Jerry Jordan.

Among those on the list of approved subs were Michael Lineal McClain, who in 2004 was sentenced to eight years in prison for the rape of a 16-year-old girl in Orange,…

*See,* "Exhibit D."

5.21    Upon information and belief, in addition to Defendant CHILLOW and Ferguson Parker who BISD continued to employ after reports of inappropriate conduct against students/minors, there were other educators/employees who were likewise retained, transferred and placed on campuses *after* BISD received reports of inappropriate conduct with students, which was in accordance with BISD's policies, practices and customs.

5.22    During the timeframe relevant to this case, BISD failed to train and/or adequately train their employees on the detection/identification, investigation, and handling of inappropriate grooming/flirting and sexually harassing/abusive behavior from educators/employees toward students, the type of which Defendant CHILLOW suffered upon JANE DOE 1.

5.23    Plaintiffs allege that Defendant CHILLOW and the Principals, Assistant Principals, Superintendents, Board of Trustees, and Administrators, in committing the above acts and/or omissions, were the agents and employees of Defendant BEAUMONT ISD and were acting within such agency and employment, and acting under the color of state law.   Defendant CHILLOW's acts toward JANE DOE 1 were performed maliciously and intentionally, for the sexual gratification of Defendant CHILLOW.

5.24    Upon information and belief, some of Defendant CHILLOW's sexual abuse and harassment of JANE DOE 1 occurred at Vincent Middle School, including one or more instances of sexual acts.

5.25    At all pertinent times, Defendant BISD's policymakers, and/or those delegated with policymaking authority adopted, authorized and/or ratified the policies, practices, customs, and indifferences outlined above, which lead to Defendant CHILLOW's sexually harassing, abusive conduct toward JANE DOE 1.

## VI.
## CLAIMS FOR RELIEF

6.0    All facts, matters, claims, and allegations set forth in the above paragraphs, or in any exhibit attached hereto, are incorporated into each of the below Claims for Relief for all purposes and without repeated recitation.   All claims and matters are pled in the alternative so as to avoid waiver.

6.1    As a direct and proximate result of the said acts of Defendants, JANE DOE 1, has suffered the following injuries and damages:

    a.    Violation of her constitutional rights under the Due Process

Clause and Equal Protection Clause of the Fourteenth
Amendment to the United States Constitution to be free from
state-sponsored deprivation of liberty without due process of law,
and enjoyment of equal protection under the law; and

b.    Pain and suffering and emotional trauma and suffering.

6.2    The actions of Defendants violated the clearly established and well settled
federal constitutional rights of Plaintiffs.

A.    <u>42 U.S.C. §1983 – Constitutional Violations – Due Process and
Equal Protection</u>

6.3    Under the Fourteenth Amendment, the Minor Plaintiff had the right, as a
public-school student, to personal security/safety and bodily integrity and Equal
Protection of Laws.   The Civil Rights Act of 1871, now codified as 42 U.S.C. §1983 as
federal law provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage, of any state or territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> any other person within the jurisdiction thereof to the deprivation of any
> laws, privileges or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

It is clearly established that, "schoolchildren do have a liberty interest in their bodily
integrity that is protected by the Due Process Clause of the Fourteenth Amendment
and that physical sexual abuse by a school employee violates that right." *Doe v. Taylor
Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (*en banc*).   Separately, the Equal
Protection Clause ensures equal protection of laws against similarly situated
individuals – *i.e.,* students without regard for gender.   42 U.S.C. §1983 requires that

the conduct complained of must have deprived the person of some privilege or immunity by the Constitution or law of the United States.   As such, Plaintiffs allege that BISD's policies, customs, practices, indifference, and acts described above and below, jointly and severally deprived Plaintiff JANE DOE 1 of her above stated constitutional rights, privileges and immunities applied to the states through the Fourteenth Amendment, which violations caused JANE DOE 1 to suffer injuries among which include severe personal, bodily and emotional injury and injury to her rights of personal safety/security, bodily integrity and public education. Additionally, BISD's policies, customs, practices, indifferences, and acts described above and below discriminated against female students.   Defendant BISD established policies, customs and/or practices and deliberate indifference to sexually inappropriate conduct were in tolerance to sexually inappropriate conduct toward said female students, among whom included JANE DOE 1 – and other female students in the district as reflected in the facts cited above and attached exhibits. The cumulative sexually abusive/harassing communications, psychological manipulation, and sexual touching and assault Defendant CHILLOW inflicted on Jane Doe 1 – deprived Jane Doe 1 of her constitutional guarantees referenced above.

6.4    With respect to Defendant CHILLOW, in conjunction with the policies, customs and practices and indifferences discussed above and below, BISD (i) hired and employed Defendant CHILLOW in disregard for his criminal history of furnishing alcohol to Minors and/or failing to conduct a criminal history for activity involving minors, and (ii) continued to employ Defendant CHILLOW after receiving

reports and information of inappropriate conduct and relationships with students at Paul Brown, (iii) allowed CHILLOW to substitute teach at Vincent where he continued to engage in sexually abusive conduct toward students, among whom included JANE DOE 1, and (iv) failed to implement training (to employees, students and parents) and policies to identify and detect inappropriate grooming, solicitous harassment from educators/employees toward students which lead Defendant CHILLOW's sexual abuse of the Minor Plaintiff in deprivation of those above rights guaranteed by the Constitution, set forth above, including the substantive due process component and equal protection rights applied by the Fourteenth Amendment.

6.5    With respect to BISD, said Defendant's actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation.   Pursuant to 42 U.S.C. §1983, BISD officials, who were policy makers for BISD and/or delegated with policymaking authority, while acting with deliberate indifference under color of state law, deprived Plaintiff JANE DOE 1 of the rights, privileges, and immunities secured by the Constitution and laws of the United States set forth above – *i.e.*, due process clause and equal protection clause of the 14th Amendment.   Upon information and belief, such rights were violated when said policymaking officials, while acting with deliberate indifference toward their incumbent duties, failed to fashion properly or to execute faithfully adequate training (employees, students and parents) and policies to recognize, investigate, record, stop, prevent and report sexually inappropriate

behavior by educators/employees, and alleviate the risk of students exposed to sexually harassing and abusive conduct.

6.6    Upon information and belief, BISD's policymaking officials adopted, authorized and/or ratified policies, customs and/or practices that were the moving force of the constitutional violations and injuries suffered to JANE DOE 1, and which generally included but were not limited to the following:

(1)    hiring and/or continuing to employ educators and employees in disregard for a known or suspected risk of sexually inappropriate conduct with students or minors;

(2)    hiring and/or continuing to employ educators/employees, who, more likely than not pose a risk of sexual abuse and harassment to students;

(3)    hiring or continuing to employ educators/employees who have a criminal history for crimes involving Minors;

(4)    overlooking or discounting complaints and information indicating inappropriate sexually based harassment and abusive conduct by educators/employees toward students, such as, Ferguson Parker, Defendant CHILLOW, and certain other of the BISD employees referenced in the attached Exhibits;

(5)    not documenting and/or misclassifying complaints of sexually inappropriate conduct;

(6)    failing to conduct proper, thorough investigations of information and behavior from an educator indicating a risk to students of sexually inappropriate conduct;

(7)    hiring,    maintaining    and/or    otherwise    allowing educators/employees to continue to work in the district in disregard    for    information    indicating    prior    or    ongoing inappropriate    sexual    harassment/abusive    conduct    toward students and/or minors, examples of which included but were not limited to Ferguson Parker, Defendant CHILLOW (Paul Brown), and other employees referenced in one or more of the attached Exhibits;

(8)     maintaining a tolerance for sexually inappropriate behavior by educators/employees, examples of which included the tolerance reflected in the Board's handling and reinstatement of Ferguson Parker, and handling of complaints against Defendant CHILLOW at Paul Brown Learning Center , and other tolerance reflected in the attached Exhibits;

(9)     failing to discipline and *permanently* remove those employees/educators, such as Defendant CHILLOW, (and Ferguson Parker, *cited above*) who are reported to have engaged in inappropriate relationships and conduct with students;

(10)    failing to train employees to recognize, identify, prevent, investigate and stop inappropriate conduct by educators toward students, including but not limited to grooming and inappropriate relationships between educators and students;

(11)    failing to promulgate and implement training policies, procedures, training, and steps to adequately and effectively

        a.    Detect and identify sexually harassing/abusive conduct toward students,
        b.    Prevent sexually harassing/abusive conduct toward students,
        c.    Protect students from the risk of sexually harassing/abusive conduct toward students,

(12)    failing to record, properly investigate and document reports of sexually inappropriate conduct by all employees – including substitute teachers -- so that the information is available to all campuses in the district.

(13)    allowing employees who are suspected of engaging in inappropriate sexually based conduct toward students to be removed from one campus but continue employment with the district, without recording said wrongful conduct or making the information available to other campuses.

(14)    failing to train students to recognize, identify, and report inappropriate conduct by educators toward students, with assurances for their safety and wellbeing.

(15)    failing to adhere, follow, and apply existing policies prohibiting sexually

harassing conduct and impose discipline for not following said policies.

Some or all of the above-mentioned policies, customs and practices were adopted, ratified and followed by the Board, Superintendent, Administrators, Principals/Assistant Principals, etc. during Defendant CHILLOW's employment with the district and at the time of the harassment and abuse inflicted by Defendant CHILLOW on JANE DOE 1 and others.   One or more of the above policies, practices and/or customs were the moving force behind the violations of Plaintiffs' constitutional rights to personal security and bodily integrity and Equal Protection of Laws.

6.7    BISD's policymaking officials failed to maintain enforcement of sufficient policies to govern the hiring, training, supervision, and discipline of educators – including uncertified educators like Defendant CHILLOW -- relative to protecting students from the risk of sexual abuse, which lead to the instant abuse and harassment of JANE DOE 1 and deprivation of Plaintiffs' constitutional rights to personal security and bodily integrity and Equal Protection of Laws.

6.8    During the relevant time period leading up to Defendant CHILLOW's harassment and abusive conduct toward JANE DOE 1, those who were vested with or delegated policymaking authority (including but not necessarily limited to BISD's Board), Superintendent, Administrators, were deliberately indifferent to the lack of policies and procedures and training in the prevention of the known or suspected risk of sexual harassment and abuse of students.   Without limitation, the deliberate indifference adopted and followed by the Board during the relevant time period

leading up to and resulting in Defendant CHILLOW's harassment, abuse and sexual assault of JANE DOE 1 is illustrated by the policies and practices identified by Superintendent Thomas in the Guillory case set forth above (*supra*), as well as failures listed in items no. 1 thru 14 above.

6.9    Among the resulting actual and compensatory damages and injuries Plaintiffs suffered include physical/bodily injury, severe emotional trauma and mental anguish, pain, fear, depression, anxiety, and medical condition requiring medical care and treatment, as well as dignitary harm.   As JANE DOE 1 is a minor, her parents JOHN DOE and JANE DOE are responsible for payment of related medical expenses until JANE DOE 1 attains majority.

## B.    Title IX

6.10    The facts set out above give rise to an implied cause of action for damages and declaratory relief under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq*.   Plaintiffs sue only BISD for violations of Title IX.

6.11    As noted above, Title IX of the Education Amendments of 1972 prohibits discrimination and harassment on the basis of sex in all federally-funded educational programs.   When Congress first passed Title IX more than forty years ago, it had two related objectives:   First, Congress wanted to prevent federal funds from being used to support discriminatory practices; second, it wanted to provide individuals "effective protection against those practices."   Title IX is enforceable through an individual's private right of action and allows for the recovery of damages.   The above-described sexual abuse and assault of the Minor Plaintiff was a form of sex

discrimination because the abuse and harassment was based on sex and was so severe, pervasive, and objectively offensive that it deprived the Minor Plaintiff of educational opportunities or benefits provided by the school, such as the ability to attend and graduate from high school and/or or secondary institution, leading to lost earning capacity.

6.12    The Minor Plaintiff, (1) was a member of a protected class, (2) was subjected to sexual harassment and emotional abuse by her teacher sufficient to lead to a criminal indictment and conviction, (3) was subjected to harassment/abuse based on her sex, and (4) was subjected to a hostile educational environment created by Defendant BISD's (i) customs and practice outlined above, and (ii) failures to properly investigate, discipline, stop, and/or otherwise address and prevent the sexually inappropriate conduct/abuse from Defendant CHILLOW.

6.13    Upon information and belief, BISD, through its officials, principals, assistant principals, administrators, and other employees with the requisite authority to prevent and/or stop   Defendant CHILLOW's harassment and abuse of students (and particularly JANE DOE 1), were deliberately indifferent to (1) information and reports that Defendant CHILLOW engaged in improper sexually based grooming, harassing/abusive conduct toward students at Paul Brown Learning Center, (2) had a history furnishing alcohol to minors, and (3) was engaging in acts of improper grooming and solicitation of a sexual nature toward students on campus at Vincent, including the Minor Plaintiff.   BISD was likewise aware of the custom and practice of tolerance for sexually inappropriate conduct by educators/employees revealed in

the *Guillory* case, as described above, and the subsequent and ongoing lack of training and policies to prevent similar harassment by educators following the *Guillory* case and other similar reports of harassment in the district referenced in the attached Exhibits.

6.14    Based on the above facts, Plaintiffs allege a "heightened risk claim:" that prior to the report of sexual abuse of JANE DOE 1, BISD's employees with authority to take remedial steps to protect against sexually inappropriate conduct had actual notice of Defendant CHILLOW's history of sexually inappropriate behavior with students and the threat posed by continued employment of Defendant CHILLOW and deliberate indifference to same—constituted actionable discrimination that caused and substantially increased JANE DOE 1's risk of being sexually abused by Defendant CHILLOW.   Considering the facts and disposition of the *Guillory* case, and other reports of alleged sexually based harassment against students in the district, by the time of Plaintiffs' injuries, BISD had been aware of the heightened risk of abuse resulting from its policies, practices and customs, and its failures to implement proper training and procedures to identify and eliminate the risk of sexual harassment and abuse to students.   Those policies, practices and failures caused and substantially increased JANE DOE 1's risk of the sexual harassment/abuse and assault she suffered.

6.15    Additionally, upon information and belief, at the time of Defendant CHILLOW's abuse of JANE DOE 1, the Principal/Assistant Principal, and school administrators at Paul Brown with authority to correct/prevent/stop sexual

harassment – including but not limited to Counselor Hood and Assistant Principal
Landry, were aware of information indicating Defendant CHILLOW's past acts of
sexually inappropriate conduct, but were deliberately indifferent to same, which lead
to future sexually harassing/abusive conduct toward students, among whom would
eventually include JANE DOE 1, and at least one other Minor student at Vincent.
Additionally, upon information and belief, the Principal/Assistant Principal and
employees at Vincent with authority to correct/prevent/stop sexual harassment were
aware of information indicating that students, including JANE DOE 1, were at risk
of suffering sexual harassment from Defendant CHILLOW.

6.16   Institutions may be held liable in damages under Title IX "where they are
deliberately indifferent to sexual harassment, of which they have actual knowledge
that is so severe, pervasive, and objectively offensive that it can be said to deprive the
victims of access to the educational opportunities or benefits provided by the school."
BISD's deliberate indifference response to the harassment—or lack thereof—was
clearly unreasonable in light of the known circumstances.

6.17   BISD's employees with the requisite authority/obligations to take remedial
steps to stop sexual harassment, were deliberately indifferent to sexual harassment
from Defendant CHILLLOW and the risk of sexual harassment from Defendant
CHILLOW—of which they had actual knowledge—that was so severe, pervasive, and
objectively offensive that it could be said to deprive the Minor Plaintiff of access to
the educational opportunities or benefits provided by the school (including but not
limited to the ability to attend and graduate from high school and/or or secondary

institution, leading to lost earning capacity.)    BISD's failure to address and conscious disregard/discounting of inappropriate conduct committed by Defendant CHILLOW was a form of discrimination. BISD's knowledge of the need to supervise educators and follow a zero-tolerance policy of sexually inappropriate conduct toward students, and specifically acts by Defendant CHILLOW, constitutes deliberate indifference. Finally, BISD's indifference resulted in an environment in which Defendant CHILLOW could sexually harass/abuse students, including the Minor Plaintiff. That vulnerability—or heightened risk—constitutes harassment under Title IX.

6.18    Among the resulting actual damages and injuries Plaintiffs suffered physical/bodily and mental injury with physical manifestations and injury, severe emotional trauma and mental anguish, pain, fear, depression, dignitary harm, anxiety, among a host of other problems, requiring JANE DOE 1 undergo past and future medical care and treatment.   As JANE DOE 1 is a minor, JANE DOE and JOHN DOE are responsible for payment of related medical expenses until JANE DOE 1 attains majority.

### C.    Assault and Battery

6.19    Plaintiffs allege that Defendant CHILLOW committed an assault and battery upon the Minor Plaintiff.   Said conduct of Defendant CHILLOW was committed intentionally, knowingly and/or recklessly and was a proximate cause the personal injuries and emotional injuries to the Minor Plaintiff.   Said injuries were the direct and immediate consequences of Defendant CHILLOW's wrongful acts, and a natural and direct result of the assault and battery.

6.20   Defendant CHILLOW committed an assault and battery upon the Minor Plaintiff by intentionally and/or knowingly causing physical sexual contact with the Minor Plaintiff.   Defendant CHILLOW knew or should have believed that the Minor Plaintiff would regard the contact as offensive, and/or provocative, and was the result of his psychological manipulation, abuse, coercion, and intimidation.   Defendant CHILLOW knew or should have known that the acts, as previously described, were provocative, harmful, and/or offensive to Plaintiffs. Said acts of Defendant CHILLOW were committed intentionally, knowingly, and/or recklessly, and they were the proximate cause of the Minor Plaintiff's physical/bodily injury, dignitary harm, emotional pain and distress, embarrassment, anxiety, shame, and/or worry. Furthermore, said injuries were the direct and immediate consequences of Defendant CHILLOW's wrongful acts and a natural and direct result of the sexual conduct.

6.21   At no time was Defendant CHILLOW privileged to take the action described herein as necessary.   Moreover, Defendant CHILLOW's assault and battery of the Minor Plaintiff was not objectively reasonable.

### D.   Intentional Infliction of Emotional Distress

6.22   Plaintiffs assert that the acts of physical and emotional abuse committed by Defendant CHILLOW render him liable for intentional infliction of emotional distress.

6.23   In the sexual abuse of Plaintiff JANE DOE 1, Defendant CHILLOW acted intentionally and/or recklessly, and his conduct was so outrageous in character and extreme in degree that it went beyond all possible bounds of decency.   Defendant

CHILLOW's actions constituted outrageous conduct because he knowingly abused his position of authority as a teacher and knew that the Minor Plaintiff was particularly vulnerable to emotional distress because she was 15years old at the time.   Such conduct by the Defendant CHILLOW proximately caused the Minor Plaintiff's physical/bodily injury, dignitary harm, emotional distress, embarrassment, fright, horror, grief, shame, humiliation, and worry.

6.24   Among the resulting actual damages and injuries Plaintiffs suffered include severe emotional trauma and mental anguish, pain, fear, depression, anxiety, among a host of other problems, requiring JANE DOE 1 undergo past and future medical care and treatment.   As JANE DOE 1 is a minor, JANE DOE and JOHN DOE are responsible for payment of related medical expenses until JANE DOE 1 attains majority.

## VII.
## Damages

7.0   Plaintiff JANE DOE 1 suffered direct bodily injury, mental/emotional injury and damages from the assaults, which required medical treatment, and which will require medical treatment in the future. Plaintiffs pray for a Judgment awarding all actual compensatory damages set forth above –in the past and future -- which include but are not limited to: costs of medical care in the past and future, damages for physical/bodily injury and severe emotional trauma (fear, humiliation, depression, etc.), physical and mental pain, mental anguish in the past and future; loss of enjoyment of life in the past and future; impairment to earning capacity caused by the loss of educational opportunities, dignitary harm, and out of pocket expenses.

7.1    JANE DOE and JOHN DOE are the proper parties to recover related medical expenses for treatment to JANE DOE 1 incurred prior to JANE DOE 1 reaching majority, as well as to recover for the costs incurred for the minor's related out of pocket expenses until JANE DOE 1 reaches majority and any economic losses, which were incurred due to Defendants above-referenced wrongful conduct and violations of constitutional protections.

7.2    Pleading in the alternative, in the event a jury finds Defendant BISD liable for the causes of action plead but awards no damages, Plaintiffs seek to recover an awrd of nominal damages.

7.3    Pursuant to 42 U.S.C. §1988, a prevailing party in a §1983 case is entitled to recover its attorney's fees and expert fees.  Hence, Plaintiffs further pray for a judgment awarding Plaintiffs all costs, attorney fees, and expert fees associated with bringing the present case to trial.

7.4    In addition, Plaintiffs pray for punitive damages against Defendant CHILLOW only.  Punitive damages are designed to punish and deter persons such as Defendant who have engaged in egregious wrongdoing.  Punitive damages may be assessed under §1983 when the Defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  As such, Plaintiffs are entitled to punitive damages from Defendant.

7.5    Plaintiffs assert that all conditions precedent to filing suit have occurred.

VIII.
DEMAND FOR JURY TRIAL

8.0    Pursuant to FED.R.CIV.P. 38, Plaintiffs demand a trial by jury on all claims and matters at issue in this lawsuit.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial upon the merits, Plaintiffs recover compensatory damages against Defendants, jointly and severally; that Plaintiffs also recover punitive damages against each Defendant in an amount to punish and/or deter similar future conduct; and that Plaintiffs recover against each Defendant all reasonable and necessary court costs, attorney's fees, and expert fees in regards to this suit.  Further, Plaintiffs pray for all declaratory relief requested above.  Plaintiffs pray to recover pre-judgment and post-judgment interest at the highest rate allowed by law that can be assessed against Defendants in the event of recovery, and Plaintiffs pray for any and all further relief, to which they may show themselves to be entitled.

Respectfully submitted,

REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
Post Office Box 26005
Beaumont, Texas 77720-6005
Telephone:   (409) 838-1000
Telecopier:   (409) 833-8236

By:   */s/ Mark Frasher*
Mark Frasher
State Bar No. 00798187
mfrasher@rmqlawfirm.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true copy of the above and foregoing document, on all appropriate parties this 20th day of March 2024.

_/s/ Mark Frasher_
Mark Frasher